(57 South. 280.)

No. 18,758.

NATIONAL PACKING CO. v. DAVIS & · SCHARFF GROCERY CO., Limited.

(Jan. 15, 1912.)

*(Syllabus by the Court.)*

FACTORS (§ 31*)—ACCOUNTING FOR PROCEEDS.

Defendant, having received and sold goods at prices quoted by the plaintiff, thereby agreed to pay such prices, and cannot avoid the obligation by the plea that the prices charged were in excess of current market quotations.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 34–36; Dec. Dig. § 31.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by the National Packing Company against Davis & Scharff Grocery Company, Limited. Judgment for plaintiff for less than the amount claimed, and it appeals. Reversed and rendered.

Weeks & Weeks, for appellant. Burke & Burke and Ventress J. Smith, for appellee.

LAND, J. Plaintiff sued the defendant for a balance of $4,614.12, alleged to be due for packing house products sold and delivered since November 1, 1907. The petition alleges a balance of $5,285.35 due on merchandise account, but remits the sum of $671.23 for overcharges in weight made on shipments prior to November 1, 1907.

The defendant for answer averred systematic overcharges, both in weights and prices, from about April, 1906, to October, 1907, to the aggregate amount of $5,739.60. for which the defendant prayed judgment in reconvention.

The judgment of the court, based on the report of experts, was in favor of the plaintiff for a balance of $704.80, with interest and costs. Plaintiff has appealed.

In September, 1903, the defendant entered into a "jobber's contract" with the Hammond Packing Company, of Louisiana, having its home office at Chicago, Ill. The instrument was drafted in Chicago, Ill., and it was stipulated that all questions arising under the contract should be governed by the laws of that state. The salient stipulations of the agreement may be briefly stated as follows:

The goods, until sold, were to remain the property of the packing company, and were to be held by the defendant as its factor, and subject to its order. The defendant was to receive the goods, pay freight or other charges thereon when not prepaid, sell and handle the same without expense to the packing company, except the commission or brokerage provided in the contract, and to account for the full value of every article shipped. The company's weights at the time of ship-

ment were to govern deliveries. The company guaranteed such weights, but no claim for shrinkage would be entertained. All goods used by defendant were to be billed to itself the same day they are taken from the stock of the company. Sales were to be made in each case by the defendant on its own account, at the prices quoted by the company. Unsold portions of every consignment, at the expiration of 30 days from date of shipment, were to be charged to the defendant at the prices then current.

On March 3, 1907, the defendant made a similar "jobber's contract" with the plaintiff company, which succeeded the Hammond Packing Company. Both of these Louisiana corporations were branches of the National Packing Company of New Jersey, which had an office in Chicago.

Both contracts were made by the defendant with the Louisiana corporations.

Each contract contained the following stipulation:

"You shall bill to yourselves all goods used by you on the same day they are taken from our stock. Sales shall be in each case made on your account at the prices quoted you by us."

In other words, the defendant was to charge itself for all goods used or sold at the prices quoted by the packing company. Unsold portions of consignment, at the expiration of 30 days from shipment, were to be charged to defendant at the then current prices. The contract in its very nature required the fixing of prices by the packing company for every consignment shipped to the defendant.

The defendant accepted the goods at the prices quoted by the packing company, charged itself with the quoted prices as the goods were sold, and paid on the basis of such prices from year to year. The contention of the defendant as to overcharge of prices is set forth in his answer as follows, to wit:

"That the agents of the plaintiffs systematically, beginning from a period during or about the month of October, 1906, and extending to or about the month of October, 1907, overcharged the defendants for the goods shipped, both with reference to their weight and with reference to the market quotations, which were to be the basis of the prices to be charged, thus making entries against your defendants, with fraudulent design, showing greater bulk of goods than those actually shipped, and showing higher quotations with reference to the price than those actually prevailing."

Shortage in weight is admitted, to the extent of 7,700 pounds, of dry salt shoulders, charged at $671.12. It appears that there was a shortage of stock in the New Orleans Branch, and some employé of the plaintiff, in order to cover up such shortage, raised the weights of certain products billed to defendants. This shortage was discovered and settled before the institution of this suit.

The experts appointed by the court found the amount of excessive charges by the New Orleans branch, over and above "Chicago prices," to be $4,000.99. Such prices were taken from invoices sent by packing companies to the Chicago office of the National Packing Company, covering car loads of goods shipped directly to defendants on the orders of the plaintiff sent through the Chicago office. Several witnesses for the plaintiff testified that the prices in such invoices were not definitive, but subject to adjustment between the packing companies and the National Packing Company after sales of the goods; and that such invoices did not govern the prices charged by the plaintiff as selling agent. They further testified that the business between plaintiff and the National Packing Company was on a consignment basis, with a minimum price for sales of goods; and that it was the duty of the plaintiff company to sell at higher prices, in order to meet the expenses of the branch agency in the city of New Orleans. It is evident, as a business proposition, that the plaintiff company could not afford to sell to local dealers at "Chicago prices," or at prices invoiced by the packing companies to the National Packing Company of New Jersey.

As a matter of fact, during the period stat-

ed in the answer, goods were consigned by plaintiff to defendant on prices quoted, from time to time, by the former, and the defendant accepted the goods and charged itself with the prices quoted by the plaintiff. This was the practical construction by the parties of the clause of the contract reading:

"Sales shall be in each case made on your own account at prices quoted you by us."

The defendant was under no obligation to accept the goods, if the prices quoted were not satisfactory, and was at liberty to cancel the contract at any time, and to order the goods elsewhere. The defense as to overcharge of prices was evidently an afterthought. After a full investigation and checking of accounts, the defendant verbally promised to pay the balance found due the plaintiff, and as late as January 13, 1908, wrote to the plaintiff as follows:

"Owing to bad weather the planters around here have been delayed from one to two weeks; consequently we will be unable to fulfill our promise to liquidate our account by the 13th as promised. We will be able to mail you a check for $3,000 by the 20th and the balance if the weather is fairly good by the 25th."

It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff, the National Packing Company, Limited, do have and recover of the defendant, the Davis & Scharff Grocery Company, Limited, the full sum of $4,614.12, together with 5 per cent. per annum interest thereon from judicial demand until paid, and costs of suit in both courts.